Nott, J.,
concurring:
In this case I fully agree as to the legal principles laid down in the opinion of the court, and *in the conclusion which the court has reached. But there is an additional ground on which to place the case, that, in my opinion, relieves it from its only doubts, and secures to the claimant exact justice.
In 1863 the Government of the United States saw fit to go into a banking business, in which it received people’s money on deposit, provided it were gold coin of the amount of $20, and gave them in evidence thereof certificates of deposit, popularly known as gold-certificates, and “ retained ” the coin in the Treasury “for the payment of the same on demand.” (Act March 3,1863, 12 Stat. L:, p. 709, § 5.) These certificates passed from hand to hand, and entitled the holder to go to the counter of the treasury-in New York or Boston, present his certificates, and draw the coin which they represented.
This case is based on the theory of an implied contract for money had and received. But the gold-certificates themselves formed an express contract; and the covenant of the United States, as evidenced by that contract, was to pay what the cashier of the State Bank in fact came to receive — gold coin. He performed the only obligation cast upon the bank, that of presenting the certificates for payment; and the Government is bound to perform the remaining obligation cast upon it, that of paying the coin, unless it can show a stronger title or superior equity.
The illustrative analogy by which the distinguished counsel for the Government endeavored to obviate this was that of a servant who, having abstracted money from his master’s trunk, steals other money from a third person and replaces the first with it in the trunk. It is argued that as money has no ear-mark, the third person could not maintain an action against the master to recover back the money stolen from the one and refunded to the other, and that the position of the Government here is the position of the master there. If the analogy were true, I should hold the conclusion sound. But the real analogy, I think, is that of the teller of a bank who abstracts funds from the bank and applies them to his own purposes, and then when a depositor comes in to make a deposit, fraudulently refrains from *547 crediting Mm with the amount thereof, and' applies the money to making good his own defalcation.
Hartwell was not a' servant in the sense of the defendants’ illustration, but an agent authorized by the master to receive gold-certificates and pay them. The certificates were not money in the sense of the illustration, and were not treated as money by either party when they were deposited. On the contrary, they were contracts through which the obligor undertook to pay money, and the holder, the obligee, expected to receive it. Apart from the form which Garter and Hartwell endeavored to give to the transaction, the one by the sham of picking up the certificates from the counter and pushing them inside the rail, and the other by the further sham of writing a receipt in the name of Mellen, Ward & Go., instead of paying out the gold, the case was nothing more than that of a depositor going with a check to a bank-counter, giving up the check in the expectation of receiving cash, and finding his check drawn, the amount charged to him, but the money placed in the pocket of the paying-teller instead of in his own hands.
In this case the form which the conspirators sought to give to the transaction does not impart to the Government a title or an equity. If the United States had lost by reason of the deposit being received as Mellen, Ward & Co.’s — if they had parted with value or given up securities or lost a right of action, then the bank cashier, by standing silent, would perhaps have concluded his bank froih now asserting its title. But in the absence of an equitable estoppel, the form which the Government cashier contrived to put upon the transaction could not work a transfer of title to Mellen, Ward & Go. from the State Bank, nor enable the firm to theoretically pay their debts to Hartwell, and Hartwell to pay his to the Government. The mistake (much less the fraud) of the Government cashier could not transfer either title or possession to a third person, nor affect the legal relations existing between them. Whether the bank had title or held the certificates as security for their advances is immaterial, for it had possession and the right of possession, and the right to turn the certificates into gold. They were delivered with that intent to the proper agent of the United States, and the United States received them, in contemplation of law, for the only lawful purpose for which their *548 agent could receive them, and his secret fraud could not defeat the lawful purpose of both the principals.
The petition should be amended accordingly, and judgment should be rendered for the amount of the certificates, payable in gold coin.